Ryan Roberts, with Covington & Burling, on behalf of Appellant Billy Joe Tracy Mr. Tracy, a prisoner facing execution and petitioning a federal court for a writ of habeas corpus is entitled to enhanced rights of representation. Mr. Tracy's counsel refused to communicate with him. For seven months, Mr. Tracy moved for substitution, and the District Court erroneously denied substitution without inquiring into the basis for his allegations. I am prepared to address the District Court's failure to inquire into what was a complete breakdown in counsel communication, this circuit's jurisdiction to remedy that failure, and Mr. Tracy's right to counsel on remand. The District Court failed to inquire into Mr. Tracy's serious allegations. After appointment, Mr. Tracy and his appointed counsel, Mr. Gertz, exchanged two letters each. Thereafter, from January of 2021 all the way through to the end of July, Mr. Tracy wrote his lawyer from death row three times. None of these letters received a response. Mr. Tracy's fiancee alerted counsel to this situation by email. Mr. Gertz did not then contact his client. For these months, Mr. Gertz did not schedule a visit. He did not schedule a call. Indeed, at no point prior to the filing of this motion had counsel discussed basis for relief with, or seen, or spoken to, their client. With two months left in his AEDPA deadline to file this petition for a writ of habeas corpus and counsel missing, Mr. Tracy filed pro se for substitute counsel. The District Court denied this within a week and without inquiry. The District Court did not receive any testimony. The District Court did not receive the letters at issue. And the District Court did not even receive a response. The Supreme Court has held that a District Court may not properly resolve of a motion for substitution without probing why the movement wants a new lawyer. The circuit has looked at whether or not the District Court upheld its duty to examine the basis for substitution. In U.S. v. Minor, by way of example, the District Court held a hearing in which the movement's lawyer and governmental participated. I'm confused in this case because the whole issue is you're saying the District Court wouldn't let new counsel come in. How did you get here? We are pro bono counsel on a bill. Could you, so what happened to the lawyer who's assigned the case? He's just not involved in the appeal? I mean, it's a little strange. Could you have just joined in and helped out on the District Court as pro bono counsel? We joined at the time that the appeal was filed solely for purposes of assisting with the appeal. The District Court counsel is actually conflicted in this case because the District Court counsel would be required to appear in their own performance in order to represent this issue. But could you all just say we want to help out in the District Court and join because this lawyer is not meeting with the client enough and all this stuff? I know you don't want to. I'm not trying to bind you. But theoretically, could someone, I mean, it just seems a little strange. So I think there's a theoretical and a practical answer to what you're asking right here. The theoretical answer is that representation is limited to the Court of Appeal. I'm going to ask you to do two things. Speak up and then slow down. My southern ear is listening a lot slower than you're talking. So just slow down a bit. There's a theoretical and a practical answer. The theoretical answer is that we are solely representing him on a pro bono basis on this appeal. The practical answer is that when Mr. Tracy's state habeas counsel filed the motion for appointment of counsel in the District Court in the first place, when that was filed, that motion did name willing and capable counsel that was not appointed. So practically speaking, yes, alternative options for who could represent him in the District Court have been identified. So are you court appointed? I am not a court appointed attorney. We are representing him in a pro bono. It didn't say that. Usually it'll say if you're court appointed. So how did you get here? We are his pro bono counsel solely for purposes of this appeal. So do you want to address the jurisdictional question? Yes, yes, of course. Yes. So this circuit has jurisdiction to remedy there that I've just identified at the District Court level. An order denying a capital habeas petitioner substitute counsel where there is no on the record inquiry is appealable under the collateral order doctrine. This class of orders conclusively decides whether or not counsel will continue in their representation. Does it depend on whether there was a hearing? If the district judge held a hearing and said, no, I think counsel's doing a good job, denied, no substitute counsel, then is that appealable too? So we define this class. That would be an alternative class of orders. We define this class of orders in a way that's consistent with the case law president, specifically in the context of content of qualified immunity. The class has been limited to those of which there was. The error relies on pre-issue of law. This is a slightly even more narrow classification than that. This is where there was no on the record inquiry into the underlying obligation. I apologize. I'm not directing. I'm not answering your question directly. The way you phrase it, it sounds like you think it's only appealable because there was no hearing. What I'm thinking, what about your substitution of counsel motions generally? There's a thorough hearing. There's no issue about that. The District Court just said, no, I don't think you need new counsel. Would that be appealable? In other words, does your argument turn just on the fact that there was no hearing here? Are you saying any substitution of counsel motion is immediately appealable? I wouldn't necessarily take the position that it would turn on whether or not there's a hearing. That is a very distinguishable position, though, specifically for several reasons. One of the two is that there's going to be a record. Supreme Court President Martel de Cleyre tells us that the purpose of having an on the record inquiry is in order to develop a record for the appeal to be effective. In this case, there is no record, and that goes to the effective reviewability prong of the Cohen test for the collateral order reduction. If I've addressed that, the so the conclusiveness of this order is actually endorsed by Supreme Court precedent. There's a case called Firestone v. Rashford identified at the briefing. In that case, it was found that the decision as to whether or not counsel will continue was conclusive. Furthermore, the district court in this case did not leave any suggestion that it intends to revisit this decision. But didn't Firestone also say that you have to demonstrate that the order is effectively unreviewable on appeal from a final judgment? Get it to me. Two things. It meets the first that it does. It's a conclusive determination about that particular question, whether or not you're going to be allowed to substitute counsel. But then you also have to show that it's effectively unreviewable on appeal from a final judgment, don't you? Doesn't Firestone stand for that proposition? That raises an important issue that's distinguishable between Firestone in this case. Firestone is a case of disqualification of counsel. It's a motion concerning disqualification of counsel where the traditional fact pattern where you're trying to disqualify counsel is that counsel of one party is trying to disqualify counsel for another party. It does not raise the same conflict of issue, conflict of interest issues that we have in this case that makes this order effectively unreviewable on final appeal. Specifically, counsel is impugned on appeal from, I'm sorry, counsel is conflicted on appeal from impugning their own performance at the district court. That is, whenever Mr. Tracy's district court counsel is brought up on appeal, they can't effectively argue the client's best interest, which would be the argument that they had constructively denied their client counsel for seven months. But to make the client proceed pro se would only further undermine Mr. Tracy's Section 3599 rights to counsel, which, as you know, extend through the appeal all the way up until a sentence is either amended or carried on. He's not forcing him, Mr. Tracy, to proceed pro se, though, is he? Well, Mr. Tracy, under Section 3599, is entitled to counsel on appeal. And where his counsel is conflicted from making the best arguments in his interest, he would be effectively put into the position of being made to go pro se. Maybe I don't understand. Why is counsel conflicted from making arguments on behalf of Mr. Tracy? Yes. Hypothetically speaking, if we got to a final decision, hypothetically speaking, if the petition for habeas corpus is denied and then this goes on to appeal, Section 3599E tells us that his district court counsel will continue to present him on the appeal. This is going to be the same counsel that was responsible for this complete breakdown in communication with their client and a constructive denial of counsel to their client. They would have to impugn their professional interest. They'd have to say, I effectively abandoned my client for seven months. And it's Christensen as a Supreme Court president that states that you cannot ask a lawyer to make an argument that impugns their own performance. That is a conflict, and you're entitled to other counsel in that case. So the counsel that didn't cooperate is still representing him before the district court? Functionally, yes. I don't know what that means. I'm sorry. Is he representing him or not? So he is still Mr. Tracy's counsel of record at the district court. Okay. He filed a 150-page petition, right? I mean, he did something. He did file a petition. I can't verify the number of pages right here. It was a lengthy habeas petition he filed. So Supreme Court President and Martel V. Clair at footnote four tells us that you take the facts as they were as of the time that the motion for substitution was filed. The motion for substitution was filed in July 26, 2021. The petition was filed later in September 30, 2021. So purely legally speaking, the fact that a petition was eventually filed is irrelevant as to whether or not Mr. Tracy was entitled to substitute counsel as of July 26, 2021. Moreover, the petition, our position is that the petition is irrelevant for that reason. The petition also contains in two separate places an admission on the part of the counsel that they were not able to fully meet their ethical duty to investigate all potential bases. Specifically, they hadn't spoken to their client. Going back to the Cohen test, this order resolved an issue that is important and was severable from the merits of his habeas petition. That issue, as we discussed, was whether or not a complete breakdown in counsel communication entitled Mr. Tracy to substitute counsel. This order, as we've also just discussed, is effectively unreviewable on final appeal for several reasons. One is there's no appellate record. Second is there's a conflict of interest that would further undermine his right to counsel. And a third reason is that the potential remedy, even on appeal, which would be hypothetically potentially reopening the ADPA clock, may then also frustrate the purposes, the public interest purposes of the ADPA. Third, Mr. Tracy is also entitled to counsel, limited purpose counsel, specifically to litigate just this issue on remand. Where a prisoner facing execution raises credible concerns that if they turn out to be true, entitle them to substitute counsel, Section 3599 guarantees non-conflicted counsel for purposes of those proceedings. Section 3599 protects prisoners facing execution from having to litigate post-conviction proceedings per se. However, where an attorney, an appointed attorney, develops a conflict that would require them to impugn their own performance on appeal or in the district court, other counsel is required. Indeed, Mr. Tracy's district court counsel, to confirm, has not assisted in the litigation of the issue of substitution. Under these facts, and in this case, a limited appointment purely for purposes of substitution would be sufficient to cure the conflicts. That is a procedure that this court found proper in the cases of Mendoza v. Stevens and Spear v. Stevens. I'm not sure I'm following when you talk about a limited appointment. What do you mean when you say a limited appointment? Well, as opposed to granting him substitute counsel on the merits of limited appointment purely for the substitution proceedings. To litigate the issue as to whether or not he is entitled to substitute counsel because of the complete breakdown in client communication. The argument is that under Supreme Court precedent, his counsel at the district court is conflicted from representing him in those proceedings. And as we've seen here today, the procedure involved in those proceedings are complicated, and Mr. Tracy should not be made to go pro se for those proceedings. So when he filed a motion for substitute counsel, he should have been appointed a lawyer to represent him on that motion in the district court? Is that what you're saying? I'm just trying to follow. Mostly. I'm saying where those grounds were credible. And also, if true, would warrant substitution, as they would clearly in this case, then yes. That he would be that Section 3599 clearly compels that he needs counsel for those to litigate those proceedings. By way of example, some of the counter arguments that we're facing are the facts that, just for example, he did not apply for a certification of the question to appeal. This is something that he would have known to do if he had a lawyer. For the reasons that I just mentioned, this circuit should vacate the district court's denial of Mr. Tracy's motion, remand for a non-record hearing into the substance of Mr. Tracy's allegations, and instruct the district court to appoint limited purpose counsel just for purposes of handling the question of substitution. I know we have 18 seconds, but I'm prepared to answer any further questions that you have. Thank you, counsel.  This court is without jurisdiction to review the district court's order denying Tracy's motion to substitute counsel, because that decision is reviewable after final judgment. Indeed, that is the appropriate time to take up this issue. The hold otherwise would permit federal habeas petitioners under a death sentence to not only frustrate their proceedings, but wholly obstruct them. The order is not final under the collateral order doctrine, and Tracy did not follow the procedures to take an interlocutory appeal. Thus, this court is without jurisdiction to entertain the case. Now, should the court disagree, the lower court was within its discretion to deny the motion, and this court should affirm that well-reasoned decision. Turning to the jurisdictional question, the Supreme Court has admonished that the class of decisions which are deemed final under the doctrine should remain narrow and the scope modest. This court should not expand to that class to include the decision at bar for three reasons. First, this order does not satisfy any of the Cohen factors, but most importantly, it is reviewable after final judgment. Second, it is akin to other orders regarding the suitability of counsel, all of which are not final under the doctrine. And third, it would ultimately frustrate the policy of appellate review, which disfavors piecemeal litigation, and also EDPA's policies in favor of finality and efficiency. Now, this order does not satisfy any of the Cohen factors, but most importantly, as I've said, there is no question that this order is reviewable after final judgment. Indeed, that is the posture of the case of Martel v. Clare. You mean final judgment after the habeas petition is resolved? Yes, Your Honor. Not only was that the posture in the case of Martel v. Clare, but these are the very facts that were the basis of the Eleventh Circuit's decision in Crane v. Secretary when it held that such an order denying this type of motion is not final under the doctrine. This would conclusively end the inquiry, and based on this simple precept, the court must hold that it is without jurisdiction. Now, the court can also find guidance in how it and the Supreme Court have treated other orders regarding the suitability of counsel, such as orders denying appointment on federal habeas, orders denying the substitution of counsel at trial, and orders regarding disqualification of counsel at trial. All of these orders have been found to not be appealable under the doctrine, and that is because all of these orders are appealable after final judgment. Finally— So what happens here after final judgment, and two years from now our court says, Oh, yeah, you should have substituted back in 2021 or whenever this arose, and then you'd send it back and everything would start over, you'd get new counsel, and how would that work? Effectively, Your Honor, we've seen how it has worked in other cases. I've seen it happen. Yes, Your Honor, and so, yes, it would be if the judge, if the court here did abuse its discretion, and that was brought up on appeal after final judgment, it was found to have abused its discretion, it should have appointed substitute counsel, then yes, Your Honor, it would go back and he would get a new shot at his federal habeas proceedings. Now, there are two policies which counsel in favor of waiting for final judgment or after final judgment before being able to appeal this issue. The first is the policy disfavoring piecemeal litigation, and again, this is what the court focused on in Mohawk when it talked about keeping the class of orders narrow and selective, and it even said that this particular principle has gained special force over the years. And finally, or second, excuse me, EDPA's overriding considerations of finality and efficiency, which lay over especially here in these proceedings. To allow a petitioner facing a death sentence to appeal the denial of a motion to substitute counsel in the middle of his proceedings is to give them the tools to build a dam that would completely obstruct the proceedings from ever going forward. Now, I would like to talk about the narrowing class that Tracy suggests this court should focus on when deciding the jurisdictional issue. Tracy, in his brief, said that this should only be for those under a death sentence, those petitioners under a death sentence, and when they are denied a hearing, and that's what he argues for in his brief. I believe that was a question that Judge Costa had for opposing counsel. That was the class that Tracy would have this court focus on, but that goes directly against what the Supreme Court said in Mohawk to do. The Supreme Court, when talking about the jurisdictional inquiry that must be engaged in here, it told courts you cannot engage in an individualized jurisdictional inquiry, but rather you must focus on an entire category. So the appropriate category here to consider is federal habeas petitioners, denied a motion to substitute counsel. That is the entire category. It is clear here that such an order denying a motion is appealable after final judgment, and for that reason alone this court is without jurisdiction. Now, I would briefly turn to the merits of the underlying order. Tracy argues that this court should, that the lower court abused its discretion, but in fact this court should affirm that well-reasoned decision for three reasons. First, the due process that Tracy argues should have occurred below or is required does not comport with federal habeas review. Second, the district court thoroughly reviewed each of Tracy's arguments. And three, Tracy's requested counsel would create problems already resolved by his current federal habeas counsel. Tracy asserts that the district court, and this was clear in the brief, that the district court erred by not appointing another set of attorneys and then by also not granting a hearing. But neither of those things is required in Martell. And in fact, just now opposing counsel said that counsel would only need to be appointed where there are facts that would likely warrant new counsel or the granting of new counsel for purposes of the federal habeas proceedings. So that would even require the court to engage in some kind of prima facie inquiry first and then decide do you rise to some level, some prima facie level, that would now require me to appoint you substitute counsel to argue your motion to receive yet another counsel. That process just does not comport with what is required by federal habeas proceedings. More importantly, it doesn't comport with what is required by Martell. Martell simply requires a sufficient inquiry. That is it. And the inquiry that occurred here is actually more sufficient. It goes beyond the level of the inquiry that occurred in Martell. The level of inquiry that occurred in Martell, especially there were two letters in Martell v. Clare where Clare argued or asked for new counsel. The first letter, when he first raised the issue, all the inquiry that the court engaged in was simply asking the parties to address the issue. And after about six weeks, Clare's counsel filed a letter saying we've spoken with our client and he no longer wishes to substitute us. He wants us to continue on the case. And the court said that's good enough for me. And the Supreme Court said that is correct, that that is good enough. That is a sufficient inquiry. Here the lower court did exactly what is required under Martell. It engaged in a sufficient inquiry. In fact, it treated each of the facts alleged by Tracy as true unless they were contradicted by the record. Now turning to Tracy's arguments that he made to the lower court, he complained about four issues. The first was communication. Now I would like to talk about something that opposing counsel mentioned here in court today. He complained about three letters that went unresponded to. And he said that there was a period of seven months from which counsel did not communicate with Tracy. Now he also said something interesting that I would absolutely agree with, and that is that when reviewing the lower court's decision, now of course we would argue you don't have the jurisdiction to do so, but if you did review the lower court's order, you have to take the facts at the time the motion was filed. That is where you must be cut off. And the facts at the time that the motion was filed was this, that there were, and this is per Mr. Tracy's own wording, that there were communications that actually came from his significant other. That's how Tracy worded it in his motion, that the letters in the email came from his significant other, and that on December 14th there was a letter that was sent. It was responded to on January 8th of 2021. There was then a letter that was filed in February, or that was sent in February that went unresponded to, and then there was an email that was sent on May 3rd that was then responded to by opposing counsel. So that a period of time that we're actually talking about is less than three months, from the period of January 8th to May 3rd. That is the only period where there was no communication, and the only thing that was missed was a letter. Now, I don't know about the other two letters that are, in terms of letters that didn't receive a reply, there was also a letter sent on May 3rd, and then a letter sent on May 13th to which Tracy said there was no reply. But again, the period of communication that we're actually looking at is less than three months. It amounts to one letter. And we have to remember too, as the district court noted, that this was during COVID. In fact, it was at the height of COVID. We're talking about the fall and the winter and the spring of 2020 to 2021. A district court held that a federal habeas attorney certainly has no duty to communicate with a significant other. It also found, took judicial notice of COVID-19, the problems of communication that many attorneys were experiencing in communicating with their clients that were in prisons. And in finding that, it found that the communication was not sufficient, the lack of communication, if there was such, was not sufficient to rise to the level to require substitution. Turning quickly to his other arguments, Tracy's other arguments to the court, the first was that his, and all of these arguments, by the way, are regarding just his primary, his lead counsel, Mr. Gertz, that Mr. Gertz was not qualified, and Tracy found this, or based this solely on what was on Mr. Gertz's website, as the district court correctly noted, Mr. Gertz and Ms. Matuska, who is his second chair counsel, are both on the CGA panel list for the Eastern District of Texas. Furthermore, as discussed in our brief, in the director's brief, Mr. Gertz has represented capital defendants in both state and federal litigation at all stages, or at several stages, excuse me, and it is worth noting that the non-conflicted counsel that Mr. Gertz asked for, excuse me, that Mr. Tracy asked for, is not on the CGA panel list in the Eastern District. That would be Miss Merrigan. The third argument was that Mr. Gertz had violated state bar guidelines in Texas rules of disciplinary conduct, and of course, as the district court correctly noted there, that is not guiding. It is not, it does not control the decision before the court. And in fact, here, Tracy gets apparent that really what he's trying to do is create some kind of shadow right to ineffective assistance of counsel or to effective assistance of counsel on federal habeas review, and that right simply does not exist, not to the degree that he would try to assert. Finally, really what this comes down to is they are not the attorneys of his choice, and there is nothing that guarantees a federal habeas petitioner appointed counsel of choice. Turning quickly to his requested counsel, it's worth noting, as the district court did, that two of his counsel, Mr. Dow, Mr. Newberry, were actually his state habeas counsel. They are obviously conflicted under Martinez and Trevino from raising a certain class of claims. Mr. Tracy asked also for Ms. Merrigan to be non-conflicted counsel, yet as I just mentioned, she is not on the CGA panel list in the Eastern District. And so truly what Mr. Tracy asked the court to do was to replace his current counsel that were not conflicted and that are on the CGA panel list with counsel that are conflicted and otherwise do not appear there. The lower court sufficiently addressed each of Tracy's concerns, found them to be lacking in justification. It further addressed concerns over Tracy's selection of new counsel, and in doing so it issued a well-reasoned opinion that if this court found it had jurisdiction to reach, it should affirm that decision. So in sum, we ask the court to dismiss the appeal for one of jurisdiction or alternatively affirm the lower court's decision. I see the remainder of my time. Thank you, counsel. Roboto. To begin, opposing counsel raised Martel v. Clare. Martel v. Clare is a Supreme Court case that arrived at the interest of justice standard for evaluating a substitution of counsel motion. In arriving at that standard, it stated that a movement is entitled to more than a complete breakdown in counsel communication, and I quote, even if they retain a functioning lawyer. In Martel specifically, there were two motions for substitution. The first motion for substitution, there was an inquiry where the court received a response. That is not something the court did in this case. The court in this case did not meet even the standard that was ultimately addressed in Martel. Also, Martel did not say that that was enough to receive a response. The facts are complicated because in Martel there was actually a second motion that was at issue there, but Martel said that there was an abuse of judicial discretion in this case, that we would remand for more factual finding, but it ultimately denied reversal for other grounds that were unrelated that I can go into if we need to. I would like to clarify that we are not seeking counsel of choice. The purpose of this appeal, it is directed to a constructive denial of counsel on the basis of a complete breakdown in counsel client communication. On this appeal, we are not seeking a ruling that states that Mr. Tracy is entitled to counsel of choice. As to the letters, all three of these letters were sent from Mr. Tracy at the Polonsky unit on death row to his lawyer. This is a fact that would have been made more clear in the record we concede if either one of two things happened, if the district court held a hearing to clarify this fact, or in the alternative, if Mr. Tracy had counsel that was able to represent him on this issue at the district court. Were they written by his significant other? No. So that's not true? So if you read the motion that he filed, I can understand why there would be a misperception or a misreading. It reads ambiguously. But the fact is that Mr. Tracy wrote three letters to his lawyer from the Polonsky unit from death row, and he didn't receive a response to any of them. It was only after the first two letters that Mr. Tracy's fiancée contacted his counsel by e-mail concerning the fact that the counsel was not responding to his letters. The efforts made by his fiancée were over and above in order to try and get communication with his counsel, and up until the time that he filed this motion on July 26, 2021, he was not able to get a hold of his counsel. That was his issue. To quickly address the classification of orders, the Supreme Court held in Mitchell v. Forsyth that an appropriate classification is orders in that case concerning qualified immunity to the extent that they turn on a question of law. The category of orders that we proposed here, A, is a category of orders. It's consistent with the legal framework. And B, it's consistent with Supreme Court precedent. There's no reason to strike down our definition of the classification of orders. It's consistent with the case law. There have been several cases that have been raised to say that this is not reviewable on final appeal. I have already gone through and distinguished the disqualification motions in our prior argument. The opposing counsel raised another class of orders. Those would be denying appointment of counsel. All of the cases cited to that proposition in the state's brief concern the Section 3006A context, which is a discretionary right to counsel. A discretionary right of counsel, when you have to appeal it pro se, does not raise the same issues concerning the conflicts with your attorney that you have in the Section 3599 context. In the Section 3599 context, you're entitled to a heightened right of representation on the appeal. In the Section 3006A context, you do not have that right. Therefore, when you're made to appeal pro se in the Section 3006A context, you're not necessarily having your rights further vitiated. But in the Section 3599 context, our context, when you have to handle the appeal pro se, your rights are being further undermined. The case of Crane was raised. We simply have to argue that the Eleventh Circuit appears to have gotten the prong of reviewability wrong on this point. In Crane, the Eleventh Circuit raised the argument that if the habeas petition ultimately is granted, this issue is mooted. Therefore, this is not effectively reviewable on final appeal. That does not resolve Mr. Tracy's problem in this case, specifically because that relies on the condition that the petition for habeas is granted. Effective reviewability is not secured in all conditions. In the line run of events, the petition for habeas corpus is denied, and then he's still left with no effective avenue of review on appeal. I see that my time has cleared. Thank you, Counsel. Thank you. The court will take this matter under advisement.